UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BENJAMIN ALEXANDER FAULKNER, | ) ) ) |
| Petitioner, | ) ) ) No. 3:22-cv-00655 |
| v. | ) ) |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) |

### MEMORANDUM OPINION

Before the Court is Benjamin Alexander Faulkner's ("Faulkner") Motion to Vacate, Set Aside, or Correct Sentence in Accordance with 28 U.S.C. § 2255 (Doc. Nos. 1, 18) ("Petition"). He claims his conviction under 18 U.S.C. § 2252A(g) and the accompanying forfeiture order on his Bitcoins must be set aside due to: (1) this Court's lack of jurisdiction, (2) Faulkner's guilty plea was not knowing and voluntary, (3) ineffective assistance of counsel, and (4) violations of the double jeopardy clause of the Fifth Amendment. Faulkner further argues that equitable tolling applies to the timeliness of the Petition. The Government filed a response opposing the Petition on substantive and procedural grounds (Doc. No. 31), to which Faulkner replied. (Doc. No. 41). For the following reasons, the Court finds neither equitable tolling nor actual innocence warrant addressing the Petition on the merits, and will deny the Petition as untimely.[1]

**I. BACKGROUND**

On November 2, 2018, Faulkner pled guilty to Engaging in a Child Exploitation Enterprise, in violation of 18 U.S.C. § 2252A(g). (Case No. 3:17-cr-00044, Doc. No. 107 at 3–5, Doc. No.

---

[1] The Court's opinion references documents from both the instant action and Faulkner's criminal case, Case No. 3:17-cr-00044-2. Unless specified otherwise, the docket entry citations refer to this action.

239 at 1). On August 9, 2019, this Court sentenced Faulkner to 420 months of imprisonment, to run concurrently with Faulkner's sentence of life imposed in the Eastern District of Virginia, Case No. 3:17-cr-00049. (Case No. 3:17-cr-00044, Doc. No. 239 at 3). At the sentencing hearing, the Court advised Faulkner of his appeal rights, stating:

> Now, Mr. Faulkner, I need to advise you [that] you have the right to appeal. That's 14 days from when the judgment enters. You're not going to have a final judgment today until I can do the restitution. But -- in November. If you tell your lawyer you want to appeal, he'll make sure that happens. If you tell the Clerk of Court you want to appeal, the Clerk will do it for you. And I'm handing you now a blank Notice of Appeal that you can use however you wish, but I strongly urge you to talk to a lawyer.

(Case No. 3:17-cr-00044, Doc. No. 267 at 101:11–19). The Court entered the judgment on August 15, 2019. (Case No. 3:17-cr-00044, Doc. No. 239). Faulkner did not timely appeal.

On August 12, 2022, more than three years after his sentencing, Faulkner filed his § 2255 petition.[2] (Doc. No. 1). He was assigned counsel (Doc. Nos. 9, 10) and filed a supplemental § 2255 petition on July 2, 2024 (Doc. No. 18).

## II. LEGAL STANDARD

Section 2255 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that a federal prisoner who claims that his sentence was imposed in violation of the Constitution, among other things, "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain relief under § 2255, the petitioner must demonstrate constitutional error that had a "substantial and injurious effect or influence on the guilty plea or the jury's verdict." Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005) (quoting Griffin v. United States, 330 F.3d 733, 736 (6th Cir. 2003)).

---

[2] Faulkner entitled his initial § 2255 filing as a "Second and Successive" petition. (Doc. No. 1). Despite Faulkner's characterization of his initial filing in this matter as a "second" petition, the Court is unable to locate a prior § 2255 petition filed by Faulkner. Accordingly, the Court will treat Faulkner's August 23, 2022 filing as his first § 2255 petition. (See Doc. No. 9).

2

### III.    ANALYSIS

The timeliness of the Petition controls the Court's analysis.  Motions under § 2255 must be timely.  A one-year statute of limitations period runs from the latest of several triggering dates, including, as relevant here, "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).  "[W]hen a federal criminal defendant does not appeal to the court of appeals, the judgment becomes final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed."  Sanchez-Castellano v. United States, 358 F.3d 424, 427 (6th Cir. 2004).  The appeal period is generally 14 days.  Fed. R. App. P. 4(b)(1) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal.").

The Court entered its judgment on Faulkner's criminal case on August 15, 2019.  (Case No. 3:17-cr-00044, Doc. No. 239).  Faulkner did not file an appeal, so the Court's judgment became final when the 14-day period to appeal passed.  See Sanchez-Castellano, 358 F.3d at 427; Fed. R. App. P. 4(b)(1).  Faulkner's opportunity to appeal the judgment expired on August 29, 2019, requiring Faulkner to file his Petition by August 29, 2020 for it to be timely.  28 U.S.C. § 2255(f)(1); see United States v. Young, 188 F.3d 510 (6th Cir. 1999) (table) ("The final judgment in a criminal case is the imposition of sentence, and any appeal is postponed until the entry of that judgment.").

Faulkner did not file the Petition until August 12, 2022, nearly two years after his deadline to do so expired.[3]  (Doc. No. 1 at 17); see 28 U.S.C. § 2255(f)(1).  Given Faulkner's untimely

---

[3] The Court considers the date of the Petition to be the date it was originally filed in the state prison's mailing system.  (Doc. No. 1 at 17); see Towns v. United States, 190 F.3d 468, 469 (6th Cir. 1999) (applying Houston v. Lack, 487 U.S. 266, 270–72 (1988) prison mailbox rule in

3

filing, the Government properly raises a statute of limitations defense. McSwain v. Davis, 287 F. App'x 450, 456 (6th Cir. 2008) (the Government has the "initial burden of raising the statute of limitations defense"). Accordingly, the burden shifts to Faulkner, who does not dispute that the Petition is late, to persuade the Court that he is entitled to excusal for his late filing. Id. (citing McClendon v. Sherman, 329 F.3d 490, 494 (6th Cir. 2003) and Griffin v. Rogers, 308 F.3d 647, 653 (6th Cir. 2002)). Faulkner contends that his late filing should be excused because he is entitled to equitable tolling and because he is actually innocent of his convicted crime. (Doc. No. 18 at 26–27). The Court will address each argument in turn.

    A. Equitable Tolling

Faulkner argues that the Court should toll the one-year statute of limitations on the Petition to the date Faulkner filed the Petition. "The doctrine of equitable tolling allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances *beyond that litigant's control.*'" Robertson v. Simpson, 624 F.3d 781, 783 (6th Cir. 2010) (quoting Graham–Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 560–61 (6th Cir. 2000)) (emphasis added). Faulkner "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). To determine whether Faulkner has carried his burden, the Court must evaluate whether "the factual allegations are sufficient to support equitable tolling and [must] review the [] court record in order to establish whether [Faulkner's] assertions are refuted by the record or otherwise without merit." Ata v. Scutt,

---

determining that the applicable day of prisoner's filing of a § 2255 motion as the day the inmate signed motion and delivered it to prison mailroom personnel)).

662 F.3d 736, 742 (6th Cir. 2011). Ultimately, equitable tolling is bestowed "sparingly" and is a "fact-intensive inquiry[.]" Robertson, 624 F.3d at 783–84.

The Court need only address the second Pace factor—whether there is an extraordinary circumstance that prevented Faulkner's timely filing—as Faulkner's inability to demonstrate as much controls here. See Pace, 544 U.S. at 418. On this issue, Faulkner asserts two extraordinary circumstances prevented his timely filing the Petition: (1) the COVID-19 pandemic; and (2) his lawyer's non-responsiveness in sending him relevant materials for his Petition. Faulkner asserts that based on these extraordinary circumstances, the Court should toll the date that the clock began to run on his Petition from August 2019 to the Fall of 2021. The Government contends this tolling is unwarranted, given the record shows that: Faulkner was able to access the necessary legal materials and documentation to file the Petition in a timely fashion despite the pandemic; Faulkner had roughly seven months prior to the start of the pandemic to prepare his Petition; and no circumstances warrant tolling for nearly two years. (Doc. No. 31 at 7–9).

On Faulkner's first argument, the Court takes Faulkner at his word that the COVID-19 pandemic triggered "severe lockdowns in each of the prisons that housed" him, at least for some time, that likely made his ability to file the Petition more difficult. (Doc. No. 18 at 28). However, notably absent from the record are any announcements or policies from the Bureau of Prisons or other relevant State authorities confirming the duration of lockdowns. Further, the record conclusively reflects that the pandemic restrictions did not continue for so long that Faulkner was unable to file his Petition until nearly two and a half years after COVID-19 began. (See, e.g., Doc. No. 18-2 ¶ 12; Doc. No. 31-7 at 1). Indeed, as the Government emphasizes, Faulkner's own letter to his former counsel in April 2021 states that his facility was "finally coming off the COVID lockdown." (Doc. No. 31-7 at 1). Consistent with this, Faulkner acknowledges in his declaration

5

that he had some access to legal resources during the pandemic lockdown, albeit limited in nature. (Doc. No. 18-2 ¶ 12 (Faulkner stating that he had access to six computers in his unit during COVID-19, one of which had Lexis-Nexis, until he started "meaningful work" on his case in Fall 2021)).

True, Faulkner's statements suggest that as late as mid-2021, he was still feeling the impact of COVID-19 while in prison. (See id.). So it is more likely than not that the pandemic may very well justify equitable tolling to some degree, as the cases cited by Faulkner demonstrate, but Faulkner has far from justified that tolling of a *year* from Fall 2021 is warranted. The cases that Faulkner cites in support do not suggest otherwise, as each provides mere months of tolling relief after the petitioners made tangible showings of the impact of the COVID-19 pandemic, which is not present in the record here. See, e.g., Pickens v. Shoop, 2020 WL 3128536, at *2 (S.D. Ohio June 12, 2020) (granting petitioner's unopposed request to file a petition within 94 days of the COVID-19 state of emergency being lifted, and declining to address any issues of equitable tolling); Cowan v. Davis, 2020 WL 4698968, at *6 (E.D. Cal. Aug. 13, 2020) (tolling habeas petition deadline to November 11, 2020 where there were established facts in the record that COVID-19 pandemic emergency conditions were ongoing); Fitzgerald v. Shinn, 2020 WL 3414700, at *5 (D. Ariz. June 22, 2020) (granting petitioner a 90-day tolling period to file an amended petition, after which it would evaluate COVID-19 and diligence considerations).

Indeed, while certainly not required, see United States v. Gabaldon, 522 F.3d 1121, 1126 (10th Cir. 2008), Faulkner could have filed the Petition well-before COVID-19 began, undermining the necessity for any tolling period. See Mims v. United States, 2021 WL 409954, at *3 (E.D. Mo. Feb. 5, 2021) (petitioner asserting inability to access the law library because of COVID-19 was not sufficient for equitably tolling given petitioner failure to show he was

diligently pursuing rights prior to COVID); United States v. Thomas, 2020 WL 7229705, at *2–3 (E.D. La. Dec. 8, 2020) (similar); United States v. Barnes, 2020 WL 4550389, at *2 (N.D. Okla. Aug. 6, 2020) ("Even assuming that a lockdown due to the COVID-19 pandemic delayed defendant's ability to file his motion, it does not explain the more than one-year delay. COVID-19 measures have been in effect since March 2020, and defendant could have filed his motion long before March 2020.").

"The bottom line is that the COVID-19 pandemic does not automatically warrant equitable tolling for a petitioner who seeks it on that basis." United States v. Henry, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020). Because Faulkner's own statements are inconsistent on the impact of COVID-19 on his ability to timely file the Petition, he has failed to show that the pandemic is an extraordinary circumstance warranting tolling for more than two years in this case. See Andrews v. United States, 2017 WL 6376401, at *2 (6th Cir. Dec. 12, 2017) ("Courts have consistently held that general allegations of placement in segregation and lack of access to legal materials are not exceptional circumstances warranting equitable tolling, especially where a petitioner does not sufficiently explain why the circumstances he describes prevented him from timely filing a habeas petition[.]"); see also Chapman-Sexton v. United States, 2021 WL 292027, at *3 (S.D. Ohio Jan. 28, 2021) ("The record does not indicate that impact of any extraordinary circumstances imposed by COVID-19 prevented Petitioner from timely filing this federal habeas corpus petition within the one-year period[.]").

Faulkner's second argument for equitable tolling, his counsel's non-responsiveness is an extraordinary circumstance justifying tolling the statute of limitations by roughly two years, is no more persuasive. In support, Faulkner argues that his former counsel prevented him from getting the factual basis for his guilty plea until Summer of 2021, delaying his ability to fully evaluate his

7

double jeopardy and jurisdictional § 2255 arguments. However, review of the record reflects that Faulkner's former counsel was not so egregiously nonresponsive as to warrant extraordinary circumstances for equitable tolling. Holland, 560 U.S. at 649. Instead, the record shows that Faulkner's former counsel sent him any materials he, or his mother, requested in a timely fashion. (See, e.g., Doc. No. 31-1 (Faulkner's mother requesting materials for his § 2255 Petition on January 2, 2020); Doc. No. 31-2 (January 3, 2020 letter from paralegal confirming counsel's office sent Faulkner § 2255 materials); Doc. Nos. 31-4, 31-5 (showing similar correspondence from March 2020 regarding Faulkner's Virginia case)). In fact, the record reflects that Faulkner did not request the factual basis for his plea until May 4, 2021, which former counsel sent mere weeks later. (See Doc. No. 31-9). Faulkner's own lack of diligence in requesting materials he now purports to rely on here does little to reflect his former counsel's supposed non-responsiveness. This is particularly true where the record indicates his counsel was anything but unavailable to him.

Based on the scant evidence before the Court, neither the COVID-19 pandemic, nor his former counsel's conduct, constitute the rare circumstances in which equitable tolling should be applied to make Faulkner's nearly two-year tardy Petition timely.[4]   See Robertson, 624 F.3d at

---

[4] Faulkner argues on reply that he reasonably thought his case was on appeal, and in turn did not realize the statute of limitations on the Petition had passed. The Court need not address the merits of this argument—tenuous in the record as it may be—given that Faulkner waived this argument by not raising it in his opening or amended Petition briefing. (See Doc. No. 18 at 26–30 (not relying on lack of knowledge about counsel failing to file an appeal as grounds for tolling)); see also Sanborn v. Parker, 629 F.3d 554, 579 (6th Cir. 2010); Killian v. United States, 2018 WL 1475607, at *3 (E.D. Tenn. Mar. 26, 2018) (argument about ineffectiveness raised for the first time in a reply brief in support of a motion to vacate waived). In any event, the reason why Faulkner did not file a direct appeal of this Court's judgment is irrelevant to the threshold question of whether the Petition is timely. To the extent Faulkner believes he received ineffective assistance from his trial counsel, the full scope of those facts was known to Faulkner in May 2021 when his counsel informed him that he did not file an appeal. Faulkner's delay in raising those complaints for more than a *year* renders any argument on that issue untimely.

783–84 (equitable tolling is applied sparingly). Given this, the Court need not address the second tolling factor and declines to apply equitable tolling to the Petition.

B. Actual Innocence

Faulkner next contends that the Court should address his Petition on the merits because he is actually innocent of the crime. This is true, he reasons, because his conviction is jurisdictionally invalid. (Doc. No. 18 at 20–21, 26). Under the "miscarriage of justice exception to the AEDPA's statute of limitations," the late filing of a petition is excused if the petitioner can show actual innocence. McQuiggin v. Perkins, 569 U.S. 383, 399 (2013). "[T]he threshold inquiry is whether 'new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial [or guilty plea]." Souter v. Jones, 395 F.3d 577, 590 (6th Cir. 2005) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327. In considering this, "[i]t is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). This means that a petitioner must demonstrate that "he *factually* did not commit the crime." Hubbard v. Rewerts, 98 F.4th 736, 743 (6th Cir. 2024). At bottom, "the actual innocence exception should 'remain rare' and only be applied in the 'extraordinary case.'" Souter, 395 F.3d at 590 (quoting Schlup, 513 U.S. at 321).

The parties dispute whether Faulkner's argument that his conviction is invalid for jurisdictional reasons is a factual argument, requiring the Court to consider it on the merits, or a legal argument that can be disposed of for untimeliness. On one hand, the Government asserts that courts in this Circuit addressing similar arguments have found it to be of the latter. See Casey v. Tennessee, 399 F. App'x 47, 49 (6th Cir. 2010) ("Even if Casey is correct that the juvenile court's invalid transfer order entirely deprived the circuit court of jurisdiction to try him as an adult, the

9

'new evidence' he adduces in support of that claim in no way indicates his factual innocence of the crime charged or his lack of competence to stand trial for that charge, bearing instead only on the legal sufficiency of the transfer proceedings."); King v. Thompson, 2014 WL 1159630, at * 6 (E.D. Ky. Mar. 17, 2014) (following Casey in holding jurisdictional argument does not bear on petitioner's factual innocence); Justice v. Crews, 2011 WL 7664356, at *3 (E.D. Ky. Mar. 30, 2011) (procedural claim that court lacked subject matter jurisdiction is a claim of legal innocence); Ramos v. Wilson, 2008 WL 2556725, at *6 (N.D. Ohio June 23, 2008) (finding that petitioner's argument that the state courts that convicted him lacked jurisdiction was not "a claim of factual innocence").

On the other, Faulkner contends that because his jurisdictional argument is rooted in the elements necessary to establish the crime he was convicted of, rather than typical notions of subject matter jurisdiction, it presents a question of factual innocence. Faulkner relies on Waucaush v. United States, 380 F.3d 251, 258 (6th Cir. 2004) to support his position. In Waucaush, "the defendant and his fellow gang members murdered, conspired to murder, and assaulted, with intent to murder, members of rival gangs." United States v. Henry, 429 F.3d 603, 619 (6th Cir. 2005). "The defendant was convicted under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), which forbids 'any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" Id. (quoting Waucaush, 380 F.3d at 253). In Waucaush, the Sixth Circuit held that "where the enterprise itself did not engage in economic activity"—as was true in that case—and the Government failed to show "a substantial effect on interstate commerce," the defendant was actually innocent of violating RICO. Waucaush, 380 F.3d at 256–58.

According to Faulkner, Waucaush demonstrates that where there is a jurisdictional element of a crime, a defendant is actually innocent when it is not satisfied. Based on his reading, Faulkner asserts that the factual basis for his plea fails to establish the jurisdictional hook required to convict someone of violating 18 U.S.C. § 2252A(g). Accordingly, says Faulkner, this Court's review of the Petition on the merits is required. See id.; see also United States v. Turner, 272 F.3d 380, 389–90 (6th Cir. 2001) ("stating that a guilty plea waives all nonjurisdictional defenses to an indictment, and holding that "the failure of the government to prove a nexus between the crime and interstate commerce is not jurisdictional in a sense that it deprives the district court of subject matter jurisdiction").

The Court need not decide whether Faulkner's jurisdictional arguments are factual or legal. Even assuming Faulkner is correct that he makes a factual innocence argument appropriate for tolling purposes, his argument that the jurisdictional requirements under 18 U.S.C. § 2252A(g) are not satisfied is unsuccessful. To be convicted of engaging in a child exploitation enterprise ("CEE") in violation 18 U.S.C. § 2252A(g), the Government must show that the defendant committed specified child exploitation crime(s) "as part of a series of felony violations constituting three or more separate incidents and involving more than one victim, and commits those offenses in concert with three or more other persons." Id. Faulkner's conviction is based on three underlying violations of 18 U.S.C. § 2252(a)(2). Specifically, that statute prohibits "distribut[ing]" child pornography "using any means or facility of interstate or foreign commerce" or in a way that is "in or affecting interstate or foreign commerce." Id.

The bases of these jurisdictional requirements in 18 U.S.C. § 2252(a)(2) stem from the Commerce Clause. "The Constitution delegates Congress the power '[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." United States v. Lopez,

11

514 U.S. 549, 553 (1995) (quoting Art. I, § 8, cl. 3). This power is expansive: it is "'the power to regulate; that is, to prescribe the rule by which commerce is to be governed. This power, like all others vested in [C]ongress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution.'" Id. (quoting Gibbons v. Ogden, 9 Wheat. 1, 196 (1824)). Still, the commerce power has limits; its scope can be divided into three categories. Id. at 558. "First, Congress may regulate the use of the channels of interstate commerce." Id. "Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." Id. Third, Congress has the "power to regulate those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce[.]" Id. at 558–59 (citations omitted).

According to Faulkner, the jurisdictional hooks implicated in 18 U.S.C. § 2252(a)(2) are the first and third methods of regulating commerce, *i.e.* regulation of the use of the channels of interstate commerce and regulation of activities having a substantial relation to interstate commerce. See Lopez, 514 U.S. at 558–59. Faulkner asserts that the Government cannot establish the required jurisdictional hook because his conduct is that he posted three images from Canada to a website to an anonymous server in Germany; all of which is wholly foreign activity that cannot be regulated by the Commerce Clause. The Government disagrees, noting that Faulkner admitted to acting in concert with individuals in the United States to share and trade child sexual abuse material ("CSAM"), making Faulkner's conduct substantially related to interstate commerce. (Case 3:17-cr-00044-2, Doc. No. 311, 18, 20–21).

Based on the record, the Court agrees with the Government because Faulkner admitted to acting in concert with individuals in the United States to commit violations of 18 U.S.C. §

12

2252(a)(2). Thus the predicate for his 18 U.S.C. § 2252A(g) conviction moots his actual innocence argument. When Faulkner pled guilty, he admitted to acting in concert with United States residents, including "co-defendants Patrick Dane Falte, Andrew Ryan Leslie, Brett Allen Bedusek, and with other members of 'Website A' as a part of a series of felony violations of Title 18, United States Code, Sections 2251(d)(1)(A) and 2252(a)(2), prohibiting the advertisement and distribution of child pornography." (Case 3:17-cr-00044-2, Doc. No. 311 at 18–21).

"Generally[,] the cases show that jurisdiction exists to try one who is a conspirator, whenever the conspiracy is in whole or in part carried on in the country whose laws are conspired against." Ford v. United States, 273 U.S. 593, 621–22 (1927). Given this, courts have "jurisdiction over a conspiracy and all those proved to be conspirators if the conspiracy is designed to have criminal effects within the United States and if there is sufficient proof that at least one of the conspirators committed an overt act in furtherance of the conspiracy within" a court's jurisdiction. United States v. Winter, 509 F.2d 975, 982 (5th Cir. 1975). Because of Faulkner's factual admission, he cannot meaningfully dispute that the record demonstrates that Faulkner admitted that those in his conspiracy committed acts in furtherance of the conspiracy within this Court's jurisdiction and within the scope of Congress's power to regulate commerce embedded in 18 U.S.C. § 2252(a)(2).

Faulkner's other admitted conduct demonstrates why this Court has jurisdiction of Faulkner's underlying 18 U.S.C. § 2252(a)(2) violations. Faulkner and his co-defendants arranged for their criminal enterprise to have criminal effects in the United States through: (1) co-defendant Falte, a resident of the Middle District of Tennessee, creating "Website A" (Doc. No. 3:17-cr-00044-2, Doc. No. 328 ¶¶ 1, 6–10); and (2) Faulkner assisting Falte with the management of "Website A" by, for example, approving users for membership and reviewing and approving posts

13

and maintaining a public key cryptography system (Case No. 3:17-cr-00044-2, Doc. No. 311 at 15). Winter, 509 F.2d at 982. Faulkner's co-defendants also committed overt acts in furtherance of the conspiracy within this Court's jurisdiction, as they advertised and distributed the CSAM from within the United States (Case No. 3:17-cr-00044-2, Doc. No. 311 at 16–18; Case No. 3:17-cr-00044-2, Doc. No. 328 ¶¶ 18, 21). See Winter, 509 F.2d at 982. Indeed, in each of the three underlying 18 U.S.C. § 2252(a)(2) violations of Faulkner's involvement in the CEE that led to his conviction under 18 U.S.C. § 2252A(g)—distribution of child pornography on September 14, 2015, September 30, 2015, and March 27, 2016—Faulkner made a post on "Website A." (See Case No. 3:17-cr-00044-2, Doc. No. 311 at 21). In doing so, he made the messages accessible to anyone in the United States, including Faulkner's co-defendants, as they intended. (See id.).

The record shows that Faulkner's criminal activity falls well within the reach of Congress's commerce power, as articulated under Lopez.[5] Given this, even if Faulkner is correct that his jurisdictional argument is factual rather than legal, he has failed to demonstrate that he is actually innocent of his conviction under 18 U.S.C. § 2252A(g) such that the Court must address the Petition on its merits. Accordingly, Faulkner's Petition will be denied, and his conviction will remain in place.

C. No Evidentiary Hearing is Necessary.

Faulkner requests a hearing to determine whether his former counsel failed to timely file an appeal of his conviction in contravention of his instruction to do so. (Doc. No. 18 at 22). The Court is required to hold a hearing where the petitioner raises a factual dispute underlying his claims. See Martin v. United States, 889 F.3d 827, 832 (6th Cir. 2018). Faulkner does not dispute

---

[5] The Government also argues that Faulkner's conviction can be sustained on alternative grounds, i.e., that Faulkner committed predicate offenses not named in the Indictment. (Doc. No. 31 at 15). Because the Court finds that Faulkner pleading guilty to the predicate offenses named in the Indictment sustains his conviction, it need not reach this issue.

that the facts supporting this theory were discoverable and disclosed no later than May 26, 2021, when Faulkner's trial counsel wrote to explain that no notice of appeal had been filed. (Doc. No. 31 at 7–8; see Doc. No. 31-9). Despite being on notice then that his appeal was not filed, Faulkner failed to prove there were extraordinary circumstances preventing him from filing a timely Petition on this basis. See supra, Section III.A. The record demonstrates that the Petition is untimely, and Faulkner has not raised "sufficiently specific allegations [that] would entitle [him] to equitable tolling," making a hearing addressing the merits of the Petition is unnecessary. Ata, 662 F.3d at 742, 742 n.6.

      D. Certificate of Appealability

Finally, a Certificate of Appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Where, as here, the denial of a petition is based on procedural grounds, "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Because "jurists of reason would [not] find it debatable whether" this Court is correct in its procedural ruling that equitable tolling does not apply to the Petition, a COA will not issue. Id.

## IV. CONCLUSION

For the foregoing reasons, Faulkner's Motion to Vacate, Set Aside, or Correct Sentence in Accordance with 28 U.S.C. § 2255 (Doc. No. 1) and Supplemental Motion (Doc. No. 18) will be denied. Further, a COA will not issue. Slack, 529 U.S. at 484.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE